## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANK TAYLOR, JR.,                   :        Civil No. 3:22-cv-294

        Plaintiff             :        (Judge Mariani)

    v.                            :

DR. YAMPOLSKY, *et al.*,              :

        Defendants            :

FILED
SCRANTON

NOV 1 8 2022

PER _____
DEPUTY CLERK

### MEMORANDUM

Plaintiff Frank Taylor, Jr. ("Taylor"), an inmate in the custody of the Pennsylvania

Department of Corrections ("DOC"), initiated this civil rights action pursuant to 42 U.S.C. §

1983. (Doc. 1).  Named as Defendants are Wetzel, Pawling, Sommers, Chiampi, Hartman,

Silva, Murphy, Mason, DelBalso, White, Steinhart, Minarchick, and Howell (collectively, the

"DOC Defendants"), Dr. Yampolsky and Dr. Oyede (together, the "medical Defendants"),

and several John and Jane Doe individuals.  Presently before the Court are two Rule 12(b)

motions (Docs. 18, 28) to dismiss by the DOC Defendants and the medical Defendants.

Taylor failed to respond to Defendants' motions and the time for responding has now

passed.[1]  Therefore, the motions are deemed unopposed and ripe for resolution.  For the

reasons set forth below, the Court will grant the motions.  The Court will also dismiss the

---

[1]     Taylor was directed to file briefs in opposition to Defendants' motions and was admonished that failure to file opposition briefs would result in Defendants' motions being deemed unopposed.  (Docs. 31, 33) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

action against the John and Jane Doe Defendants pursuant to Federal Rule of Civil Procedure 4(m).

## I.   Allegations of the Complaint

On or about December 5, 2017, Taylor was transferred to the State Correctional Institute at Waymart ("SCI-Waymart") on an incentive based promotional transfer.  (Doc. 1, ¶ 31).  Taylor states that he was a Z code inmate, requiring single cell placement.  (Id. ¶ 32).  However, when he arrived at SCI-Waymart, Taylor was housed in a dorm with eight inmates.  (Id. ¶ 34).  Taylor claims that he did not enter the dorm setting because he did not want to break any rules given his Z code status, and thought he was being "set up" as the Defendants knew he had many mental health diagnoses including schizophrenia, bipolar, manic depression, post-traumatic stress disorder ("PTSD"), mood disorder, and others.  (Id. ¶¶ 38-40).  Taylor underwent a 302 hearing where he claims his words were "twisted" to make it appear as though he was a threat to himself or others.  (Id. ¶ 43).  Taylor was then escorted to a psychiatric observation cell ("POC") and was given a blanket, pillow, mattress, and sheets.  (Id. ¶¶ 45, 46).

Taylor attended a treatment team meeting with "a panel of employees from the Department of Corrections" days after arriving at SCI-Waymart.  (Id. ¶¶ 2-53).  Dr. Yampolsky participated in the treatment team meeting.  (Id. ¶ 53).  During the meeting, Taylor alleges that he was asked "confusing questions" and laughed at by Dr. Yampolsky.  (Id. ¶¶ 54, 55).  Dr. Yampolsky also allegedly referenced Taylor's history of a twitching face

and making a clucking sound, which made Taylor feel threatened and humiliated.  (*Id.* ¶¶ 58, 60).  Dr. Yampolsky ordered an anti-psychotic, Risperdal, which Taylor believes he was allergic to and had not taken in ten years.  (*Id.* ¶¶ 62, 63).  Taylor inquired as to why he was prescribed Risperdal and Dr. Yampolsky explained that DOC staff had the authority to make decisions regarding which medications an inmate would be prescribed.  (*Id.* ¶¶ 63, 65).  Taylor states that Dr. Yampolsky was a psychiatrist at a previous institution where Taylor was housed and they had a few run-ins between 2006 and 2014.  (*Id.* ¶¶ 56, 57).

Taylor states that he was then housed in the Forensic Treatment Center at SCI-Waymart.  (*Id.* ¶¶ 72-74).  He was placed in a cold and dirty strip cell with restraints on his hands and feet.  (*Id.* ¶¶ 74-77).  Taylor alleges that, while housed at SCI-Waymart, he was forced to take Risperdal against his will resulting in allergic reactions to the medication, in the form of involuntary movements of his limbs.  (*Id.* ¶¶ 91-95, 100, 101).

Taylor was subsequently transferred to the State Correctional Institute at Mahanoy ("SCI-Mahanoy").  (*Id.* ¶ 105).  On or about July 20, 2020, Taylor was treated by an outside specialist and diagnosed with tardive dyskinesia.  (*Id.* ¶ 107).

Taylor sets forth the following claims for relief: Eighth Amendment Claims based on failure to intervene and failure to provide adequate medical and mental health care; an equal protection claim under the Fourteenth Amendment; a due process claim under the Fourteenth Amendment for the removal of Taylor's Z-code status without a hearing; and, medical negligence claims.  (*Id.* ¶¶ 110-121).

3

## II.   Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should

identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

[E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.   Discussion

Defendants move to dismiss the complaint on the following grounds: (1) Taylor's claims are time-barred by the statute of limitations; (2) the DOC Defendants and Dr. Oyede lack personal involvement in the alleged wrongdoing; (3) Taylor failed to state an Eighth Amendment inadequate medical care claim; (4) Taylor failed to state a plausible equal

5

protection claim under the Fourteenth Amendment; (5) Taylor failed to state a Fourteenth

Amendment due process claim; (6) Taylor failed to meet the gross negligence standard; and

(7) Taylor failed to file a certificate of merit in support of his medical negligence claim.

(Docs. 27, 29).  The Court will proceed by addressing the threshold question of whether

Taylor's claims are barred by the applicable statute of limitations.

### A.    Statute of Limitations

Defendants first seek to dismiss the complaint as barred by the statute of limitations.

(Doc. 27, pp. 4-5; Doc. 29, pp. 4-5).  They argue that because the statute of limitations

defect is clear on the face of the complaint, i.e., the cause of action accrued in December of

2017, and the complaint was file-stamped on February 28, 2022, it is appropriate to address

the issue on a motion to dismiss.  (*Id.*).

"A complaint is subject to dismissal for failure to state a claim on statute of limitations

grounds only when the statute of limitations defense is apparent on the face of the

complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).  A claim brought

pursuant to 42 U.S.C. § 1983 is subject to the same statute of limitations that applies to

personal injury tort claims in the state in which such a claim arises.  *See Wallace v. Kato*,

549 U.S. 384, 387 (2007); *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009).  Taylor's claims

arose in Pennsylvania; thus, the applicable statute of limitations is Pennsylvania's two-year

statute of limitations for personal injury actions.  42 PA. CONS. STAT. ANN. § 5524(2).  The

statute of limitations period accrues when the plaintiff knows or has reason to know of the

injury which is the basis of the § 1983 action. *See Garvin v. City of Phila.*, 354 F.3d 215 (3d Cir. 2003); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).

The allegations of the complaint pertain to incidents that admittedly occurred several years ago. (Doc. 1). Taylor asserts that he arrived at SCI-Waymart on December 5, 2017, and the events at issue occurred immediately thereafter. Based on these allegations, the statute of limitations began running at the latest, at the end of December 2017. Taylor did not file his complaint until February 12, 2022.[2] Because the conduct giving rise to Taylor's claims took place prior to December 2019, the earliest possible date on which any allegation in the complaint could be deemed timely, his claims are barred by the two-year statute of limitations applicable to § 1983 actions. Even had the action been timely commenced, the complaint would be subject to dismissal on the merits.

---

[2]   Under the prison mailbox rule, a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Pabon v. Superintendent S.C.I. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011). In establishing this rule, the Supreme Court recognized the unique challenge prisoners confront in that they cannot personally deliver their documents to the courthouse for filing, nor can they control when their documents are approved to be sent through the mail. *Houston*, 487 U.S. at 271. "The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox—he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one." *Id*. at 275. Based on the date of execution of the complaint, February 12, 2022, the complaint is deemed filed on February 12, 2022.

## B.   Lack of Personal Involvement

The DOC Defendants and Defendant Oyede move to dismiss the complaint based on their lack of personal involvement in the alleged constitutional violations.  (Doc. 27, p. 6; Doc. 29, pp. 6-7).

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  *See* 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior."  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil

8

rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208. A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *Id.* at 1207.

The complaint does not specify what role, if any, the thirteen DOC Defendants and Dr. Oyede played in the alleged denial of Taylor's rights. Under the most liberal construction, Taylor's complaint fails to state a claim for relief against the DOC Defendants and Dr. Oyede. The complaint lists the DOC Defendants and Dr. Oyede as parties to this action but fails to allege any personal involvement and fails to set forth any factual averments that identify how these Defendants were involved in the alleged wrongdoing. (*See generally* Doc. 1). There is no specific mention of Dr. Oyede throughout the complaint. (*See id.*). The only reference to the DOC Defendants is Taylor's assertion that he attended a treatment team meeting with "a panel of employees from the Department of Corrections."

9

(*Id.* ¶ 53).  Taylor also alleges that he wrote a letter to Secretary Wetzel regarding the

conditions at SCI-Waymart.  (*Id.* ¶ 98).  Simply alleging that an official ignored a prisoner's

letter of protest, or request for an investigation of allegations made therein, is insufficient to

hold that official liable for the alleged violations.  *See Rode*, 845 F.2d at 1208.  Based upon

the above legal standards, it is clear that any claims against the DOC Defendants and Dr.

Oyede are subject to dismissal based on Taylor's failure to set forth any factual allegations

against them in the complaint.  Without such factual allegations, it is impossible to conclude

that the DOC Defendants or Dr. Oyede deprived Taylor of any constitutional rights.  *See*

*Hudson v. City of McKeesport*, 244 F. App'x 519, 522 (3d Cir. 2007) (affirming dismissal of

defendant because complaint did not provide any basis for a claim against him).

     To the extent that Taylor seeks to hold any of the Defendants liable based on their

supervisory roles, this claim also fails.  It is well-established that officials may not be held

liable for unconstitutional conduct of their subordinates under a theory of *respondeat*

*superior*.  *See Rode*, 845 F.2d at 1207.  Accordingly, insofar as Taylor's claims against the

Defendants rely on a *respondeat superior* theory of liability, they are entitled to dismissal

from this action.

### C.     Eighth Amendment Failure to Intervene Claim

     To prevail on a failure to intervene claim, a plaintiff must show: "(1) that the

defendant failed or refused to intervene when a constitutional violation took place in his or

her presence or with his or her knowledge; and (2) there was a 'realistic and reasonable

opportunity to intervene.'" *Knight v. Walton*, No. 2:12-CV-984, 2014 WL 1316115, at *8 (W.D. Pa. Mar. 28, 2014) (quoting *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002)) (citation omitted).  The Third Circuit Court of Appeals has held that a corrections officer who fails to intervene when other officers are beating an inmate may be liable on a failure-to-protect claim if the officer had "a realistic and reasonable opportunity to intervene" and "simply refused to do so."  *Smith*, 293 F.3d at 650-51.

Taylor's claims against the DOC Defendants for their alleged failed to intervene are insufficiently pled.  Taylor alleges that Defendants failed to intervene in the "unconstitutional conduct of fellow Department of Corrections employee[]s."  (Doc. 1 ¶ 111).  Taylor does not identify the specific conduct that the Defendants failed to stop and does not identify the specific individuals that allegedly failed to intervene.  He does not assert that any of the Defendants were in close proximity to the incident and does not allege that they had a reasonable opportunity to intervene.  Taylor does not describe the circumstances surrounding the constitutional violation with any particularity and he does not explain how any officers could have reasonably prevented further harm through their intervention.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Based on the allegations in the complaint, the Court cannot draw the reasonable inference that any Defendant had a realistic and reasonable opportunity to intervene.  Taylor's failure to intervene claim will be dismissed.

## D.    Eighth Amendment Medical Care Claim

For the delay or denial of medical care to rise to an Eighth Amendment violation, a prisoner must demonstrate: "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). "Allegations of medical malpractice are not sufficient to establish a Constitutional violation," nor is "[m]ere disagreement as to the proper medical treatment." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). A "failure to provide adequate care . . . [that] was deliberate, and motivated by non-medical factors" is actionable under the Eighth Amendment, but "inadequate care [that] was a result of an error in medical judgment" is not.

*Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *see also Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

Here, Taylor alleges that Dr. Yampolsky prescribed medication against his will. Based on the allegations in the complaint, Dr. Yampolsky did not exhibit a wanton disregard of Taylor's medical needs, did not fail to provide any medical treatment, and did not deny any requests for medication.[3] Taylor simply disagrees with Dr. Yampolsky's medical judgment and prescription of certain medication. Such disagreement does not give rise to a constitutional claim given the considerable latitude afforded prison authorities in the treatment of prisoners. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation); *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (same). Rather, where there has been medical care, "we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Pearson v. Prison Health Service*, 850 F.3d 526, 535 (3d Cir. 2017). Taylor fails to allege facts from which it can reasonably be inferred that Dr. Yampolsky exhibited a deliberate indifference to his medical needs. The claims against Dr. Yampolsky will be dismissed.

---

[3]    Taylor does not allege that he failed to receive his medication. (*See* Doc. 1).

With respect to the DOC Defendants, for purposes of Eighth Amendment medical claims, nonmedical staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer*, 991 F.2d 64, 69 (3d Cir. 1993). Courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically based Eighth Amendment claims. *See, e.g.*, *Spruill v. Gillis*, 372 F.3d 218, 236-37 (3d Cir. 2004) (citing *Durmer*, 991 F.2d at 69); *Garvey v. Martinez*, No. 08- 2217, 2010 WL 569852, at *6-7 (M.D. Pa. 2010); *Hodge v. United States*, No. 06-1622, 2007 WL 2571938, at *5-6 (M.D. Pa. 2007). The DOC Defendants are not trained members of the medical staff subject to liability for an Eighth Amendment claim. Thus, the nonmedical Defendants were justified in believing that he was in capable hands. *See Spruill*, 372 F.3d at 236; *Durmer*, 991 F.2d at 69.

### E.    Fourteenth Amendment Equal Protection Claim

Taylor alleges that he was denied "adequate and proper medical treatment due to Plaintiff filing Grievances" in violation of the Equal Protection Clause. (Doc. 1 ¶ 113). The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*,

457 U.S. 202, 216 (1982)).  An equal protection claim can be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003); *see also Jean-Pierre v. Bureau of Prisons*, 497 F. App'x 164, 168 (3d Cir. 2012). If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest.  *See Tillman*, 221 F.3d at 423.  Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate.  *See Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-66 (1977); *Washington v. Davis*, 426 U.S. 229, 242, 244-45 (1976).  Thus, discriminatory intent must be a motivating factor in the decision, even though it need not be the sole motivating factor.  *See Vill. of Arlington Heights*, 429 U.S. at 265-66.  Moreover, to prove a lack of rational basis, a plaintiff must negate every conceivable rational basis for his differential treatment.  *See Bd. of Trustees v. Garrett*, 531 U.S. 356, 367 (2001); *Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 160 (3d Cir. 2002).

Prisoners do not constitute a protected class for Fourteenth Amendment purposes. *See Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001).  Taylor has failed to allege that he is a member of a protected class and has not adequately alleged that he was treated differently from others who were similarly situated.  He has also failed to

allege how Defendants treated him differently than others similarly situated.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment").  Additionally, Taylor fails to identify any personal involvement by any named Defendant that would subject them to liability for a potential equal protection violation.  Taylor has not alleged a basis for an equal protection claim and this claim will be dismissed.

### F.    Fourteenth Amendment Due Process Claim

Taylor next alleges that his Fourteenth Amendment due process rights were violated based on the removal of his Z-code status without a hearing.  The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  It is well-established that an inmate does not have a constitutional right to any particular custody or security classification.  *Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242.  Because prisoners have no inherent constitutional right to a particular custody or security classification, Defendants' motions to dismiss the due process claim will be granted.

### G.    Gross Negligence

Taylor alleges that the medical Defendants' conduct amounted to negligence to his mental health needs.  Pursuant to the Mental Health Procedures Act, "in the absence of

willful misconduct or gross negligence" no mental health provider can be held "civilly or criminally liable for such decision or for any of its consequences." 50 P.S. § 7114(a).  In cases arising under the Mental Health Procedures Act, the Pennsylvania Superior Court has held that gross negligence is conduct by the defendant "where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care." *Bloom v. DuBois Regional Medical Center*, 597 A.2d 671, 679 (1991)).  Here, Taylor acknowledges that Dr. Yampolsky provided medical treatment and prescribed medication. His allegations amount to a disagreement with medical treatment and alleged verbal taunting by Dr. Yampolsky.  Even construing Taylor's allegations as true and lending Taylor all reasonable inferences, he has failed to set forth a claim amounting to gross negligence. Accordingly, the medical Defendants' motion to dismiss will be granted with respect to this claim.

## G.   Medical Negligence Claim

In Pennsylvania, medical negligence, or medical malpractice, is defined as "the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (citing *Hodgson v. Bigelow*, 7 A.2d 338 (Pa. 1939)).  The existence of an injury, by itself, does not prove a doctor's negligence. *Mitchell v. Shikora*, 209 A.3d 307,

17

315 (Pa. 2019) (citations omitted).  Rather, to establish a cause of action for negligence under Pennsylvania law, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages.  *See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *In re TMI*, 67 F.3d 1103, 1117 (3d Cir. 1995)).

Pennsylvania Rule of Civil Procedure 1042.3 requires a plaintiff alleging professional negligence to file a certificate of merit within 60 days of filing the complaint.  PA. R. CIV. P. 1042.3.  The certificate must include one of the following: a written attestation by "an appropriate licensed professional" that there is a "reasonable probability that the care, skill or knowledge exercised or exhibited" by the defendant "fell outside acceptable professional standards," and that this was the cause of the plaintiff's injuries; a statement that the claim against the defendant is based only on the professional negligence of those for whom the defendant is responsible; or a statement that expert testimony is unnecessary for the plaintiff's claim to proceed.  PA. R. CIV. P. 1042.3(a)(1)-(3).  Failure to file a certificate of merit is fatal to a plaintiff's claim.  PA. R. CIV. P. 1042.7.  The requirements of Rule 1042.3 are substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim.  *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-65 (3d Cir. 2011); *Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007).  This requirement

18

applies with equal force to counseled complaints and to *pro se* medical malpractice actions brought under state law.  *See Hodge v. Dep't of Justice*, 372 F. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file a certificate of merit).

The Pennsylvania Supreme Court has noted that "[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Toogood*, 824 A.2d at 1145.  A very narrow exception applies "where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons." *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997).

On June 9, 2022, counsel for the medical Defendants mailed Taylor a Notice of Intent to Dismiss Pursuant to Rule 1042.7.  (Doc. 21).  Taylor filed three purported certificates of merit on June 27, 2022 and June 28, 2022.  (Docs. 24-26).  In these documents, Taylor restates the requirements of Pennsylvania Rule of Civil Procedure 1042.3.  (*Id.*).  Taylor's certificates of merit fail to comply with the requirements of Pennsylvania Rule 1042.3 in that they do not attest that an appropriate licensed professional supplied a written statement that there exists a reasonable probability that the care provided fell outside acceptable professional standards, or that any claim that the

medical Defendants deviated from an acceptable, professional standard is based solely on allegations that other licensed professionals for whom the defendant is responsible deviated from an acceptable professional standard.  PA. R. CIV. P. 1042.3(a)(1), (2).  Taylor does attest that expert testimony is unnecessary for prosecution of his claim against Dr. Yampolsky.  PA. R. CIV. P. 1042.3(a)(3).  However, given the nature of Taylor's claims, he must present expert testimony to establish the medical Defendants' negligence in providing medical care.  Taylor's claims appear to concern complex issues relating to the standard of care and causation, which he simply cannot establish without expert testimony.  *See Toogood*, 824 A.2d at 1151.  This is not a case where a licensed medical professional's deviation from the standard of care and that deviation's causation of injury are obvious and within the realm of a layperson.  *See, e.g., Hakeem v. Salaam*, 260 F. App'x 432, 435 (3d Cir. 2008) ("Absent expert opinion that the [defendant's] treatment deviated from acceptable medical standards, a reasonable fact-finder could not conclude that the [defendant] acted negligently.").  The medical Defendants' motion to dismiss the medical malpractice claim will be granted.  *See, e.g., Booker v. United States*, 366 F. App'x 425, 427 (3d Cir. 2010) (the usual consequence for failing to file a certificate of merit that complies with Rule 1042.3 is dismissal of the claim without prejudice).

## IV.   Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview*

*State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d

Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a

complaint is subject to dismissal for failure to state a claim, courts should liberally grant

leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515

F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  For the reasons set

forth above, Taylor's claims are factually and legally flawed.  Moreover, Taylor has failed to

respond to Defendants' motions to dismiss.  Thus, the Court finds that granting leave to

amend would be futile.

## V.    Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with

the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the
> court -- on motion or on its own after notice to the plaintiff -- must dismiss the
> action without prejudice against that defendant or order that service be made
> within a specified time.  But if the plaintiff shows good cause for the failure,
> the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  The John and Jane Doe Defendants were named in the complaint

that was filed on February 12, 2022 and, to date, have not been identified or served in this

case.  The Court must engage in a two-step process in determining whether to dismiss the

non-identified, non-served Defendants or grant Taylor additional time to effect service.

"First, the district court should determine whether good cause exists for an extension of

time.  If good cause is present, the district court must extend time for service and the inquiry

21

is ended.  If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).  Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995).  In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.*  Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. *Id.*

In the present matter, Taylor failed to establish good cause.  After the expiration of the ninety-day time period set forth in Rule 4(m), the Court notified Taylor that the action against the John and Jane Doe Defendants was subject to dismissal and directed him to show cause why the action against these Defendants should not be dismissed pursuant to Rule 4(m).  (Doc. 12).  In response to the Rule 4 show cause order, Taylor states that he attempted to obtain the names of the John and Jane Doe Defendants.  (Doc. 30).  Despite these efforts, Taylor has still failed to provide the Court with any names or addresses of the John and Jane Doe individuals listed in the complaint.  Notably, Taylor's *pro se* status is not good cause to excuse his failure to timely identify or serve the John and Jane Doe Defendants. *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004).  Based upon the

lack of a reasonable explanation for his failure to adhere to the requirements of Rule 4, the Court finds that Taylor failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m). It is Taylor's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion. (*See* Doc. 9 ¶¶ 4, 5) (advising Taylor that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Taylor's failure to identify or serve the John and Jane Doe Defendants despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the non-identified, non-served Defendants will be dismissed from this action.

VI.    <u>Conclusion</u>

The Court will grant Defendants' motions (Docs. 18, 28) to dismiss.  The Court will

also dismiss the action against the John and Jane Doe Defendants pursuant to Federal

Rule of Civil Procedure 4(m).

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: November ___, 2022